## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| IN RE<br>TEMPUS AIRCRAFT SALES AND SERVICE. LLC<br>XX-XXX-6415<br><br>Debtor.<br><br><br>BANK OF THE WEST<br><br>      Movant<br>v.<br><br>TEMPUS AIRCRAFT SALES AND SERVICE,, LLC,<br><br>      Respondent. | Chapter 11<br><br>Case No. 18-13507 MER |

### BANK OF THE WEST'S MOTION FOR RELIEF FROM STAY

Bank of the West ("**Lender**") hereby files its Motion for Relief From Stay (this "**Motion**"). In support of this Motion, the Lender alleges as follows:

### I. Summary of Relief Requested.

1. Debtor is liable to the Lender on a promissory note. The Promissory Note is secured by a perfected interest in all of Debtor's Inventory, Chattel Paper, Accounts, Equipment and General Intangibles and as well as all records of any kind related to any of the foregoing and all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds) (collectively the "**Property**"). Lender had previously obtained appointment of a receiver, which receiver has been in possession of the Debtor's assets for more than 120 days. Lender seeks relief from stay to exercise its remedies as a secured creditor under the Uniform Commercial Code and loan documents, including but not limited continuation with the receiver's administration and sale of the Property.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28

U.S.C. §§ 1334 and 157. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

3. In March 2016, Debtor made and delivered its Promissory Note to Lender in the principal amount of Eight Million Dollars ($8,000,000.00) (the "**Note**"). A copy of Note is incorporated herein and attached hereto as **Exhibit A**.

4. The Note was further evidenced and secured by a Commercial Security Agreement executed by Debtor (the "**Security Agreement**"). A copy of the Security Agreement is incorporated herein and attached hereto as **Exhibit B**.

5. The Security Agreement, at pages one and two, Section 2(a), grants to Lender a security interest in all of Debtor's assets, including the following:

>   (i) all Accounts;
>
>   (ii) all Chattel Paper;
>
>   (iii) all Documents;
>
>   (iv) all General Intangibles (including without limitation, payment intangibles);
>
>   (v) all software;
>
>   (vi) all Goods (including Inventory, Equipment and Fixtures);
>
>   (vii) all Instruments;
>
>   (viii) all Investment Property;
>
>   (ix) all Deposit Accounts of Grantor, and all deposits therein;
>
>   (x) all Commercial Tort Claims;
>
>   (xi) all money, cash or cash equivalents of Grantor;
>
>   (xii) all Supporting Obligations and Letter of Credit Rights of Grantor; and
>
>   (xiii) to the extent not otherwise included, all Proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing."

6. The property described above is collectively the "**Property**". The Property consists primarily of aircraft parts.

7. The Lender perfected its security interest under the Security Agreement by filing a UCC Financing Statement with the Nevada Secretary of State on March 21, 2016 under Document Number 2016008286-7. A copy of the UCC Financing Statement, covering "all assets", is incorporated herein and attached hereto as **Exhibit C.**

8. The Note was further evidenced and secured by a Credit Agreement executed by Debtor on March 21, 2016 (the "**Credit Agreement**"). A copy of the Credit Agreement is incorporated herein and attached hereto as **Exhibit D**.

9. The Note, the Security Agreement, the UCC-1, the Credit Agreement, and other related documents executed and delivered by the Debtor to Lender in conjunction with the Note are hereinafter collectively referred to as the "**Loan Documents**".

10. The Debtor was the exclusive dealer for Pilatus Business Aircraft Ltd. ("Pilatus") aircraft for Texas, New Mexico, Arizona, Southern California and Colorado. As the exclusive dealer for Pilatus, the Debtor also operated a factory authorized repair shop pursuant to which the Debtor could sell Pilatus parts. In September of 2017, the Debtor defaulted on its agreement with Pilatus who then terminated the dealership agreement. Essentially, the termination removed the Debtor's income producing asset: the selling and servicing of Pilatus aircraft.

11. In the fall of 2017, Debtor was in default under the terms of the Loan Documents. Debtor breached the covenants due to the facts that (1) a $12,318,014.45 judgment was entered against the Debtor; (2) the Debtor failed to provide year end audited financial statements; (3) the Debtor failed to disclose the existence of the $12.3 million judgment against it to the Bank;

12. In order to protect its collateral, the Bank filed a Complaint for the appointment of a receiver for the Collateral. On November 17, 2017, the District Court for Arapahoe County Colorado entered its order appointing Cordes and Company as Receiver. A copy of the order is incorporated herein and attached hereto as **Exhibit E**.

13. As of the Petition Date, Bank of the West is owed $7,398,849.08 in principal and $40,228.89 in interest for a total of $7,439,077.97 plus attorney fees, costs, and expenses.

14. As of the Petition Date, the Receiver was in the process of winding down the Debtor's business and liquidating its assets. The Receiver has closed the Debtor's repair shops, he has terminated the majority of the Debtor's employees, and he has been working to liquidate the Debtor's assets in a manner which will bring the highest and best price for those assets. The bankruptcy petition was filed the day before an auction of the Debtor's inventory and equipment was scheduled to take place.

15. The Debtor's dealership agreement with Pilatus has terminated. Pilatus has entered into a new dealership agreement with an unrelated third party to sell and repair Pilatus aircraft for the region.

16. The Debtor's lease has expired; and the landlord has entered into a new agreement for the premises with a third party.

17. The Receiver had also reached a preliminary settlement agreement with Pilatus. Pilatus had terminated its dealership agreement with the Debtor, but there were outstanding issues between the parties related to pre-receivership contracts to manufacture and deliver five aircraft to five customers of the Debtor. The proposed settlement agreement would have ensured that the Debtor's customers would be made whole (*ie.*, they would have received their-bargained for aircraft) and would have provided a recovery to the Debtor. The Receiver is currently holding approximately $3.2 million of customer deposits for the purchase of these airplanes in trust in a segregated account pending a resolution with Pilatus as to the delivery of these aircraft.

18. The Debtor also has potential assets related to litigation that has been asserted against its insurer and landlords. Specifically, the Debtor's hangar leases at Centennial Airport were originally with a related entity named Orion Airgroup Holdings, LLC ("Orion"). Orion filed an action against its insurer, Travelers Indemnity Co. ("Travelers"), and two landlords, claiming that the landlords were responsible for water damage to certain aircraft parts stored in an Orion facility. The Debtor was the owner of the majority of the parts. Orion asserted its claims as a bailee for the Debtor for the parts. Three days before trial, Orion and the Debtor reached a confidential settlement with Travelers. At trial, Orion secured a judgment against the landlords in the amount of $2,929,025 plus interest. While the verdict form provides that Orion was acting as a bailee of the damaged parts, the judgment is nevertheless in the name of Orion Air Group Holdings, LLC. Orion's judgment is now the subject of an appeal by the landlords.

19. After trial, Travelers transferred the settlement proceeds to the trial court's registry. Thereafter, the following parties filed motions claiming an interest in Orion's settlement and judgment proceeds: (1) the Receiver, (2) trial counsel for Orion (based on an asserted attorney's lien), (3) a purported creditor of Orion and related entity, Firefly Financial Limited, and (4) a purported judgment creditor of both Orion and the Debtor, Stonebriar Commercial Finance, LLC. The interests of the various parties in the settlement proceeds and the judgment has yet to be resolved.

### III. ARGUMENT

20. Section 362(d) of Title 11 sets forth the grounds for relief from the stay:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if –
>
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization.

21. In this case, relief from stay as to the Property is appropriate under both Sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code.

**A.  Lack of Equity and Not Necessary for an Effective Reorganization - § 362(d)(2)(A)**

22. With respect to Section 362(d)(2), relief from stay should be granted because Debtor has no equity in the Property and the Property is not necessary to an effective reorganization.

23. To determine whether the Debtor has equity in the property at issue, the amount of the debt and the value of the property must be determined. In determining the amount of debt, all liens against the property must be considered for purposes of § 362(d)(2)(A). *In re Steffens,* 275 B.R. at 577 (Bankr. D. Colo. 2002).

24. In this instance, the Receiver was in the process of liquidating the Debtor's assets at the time the Petition was filed. Bank of the West did not anticipate that the Receiver's recovery will pay its debt in full.

25. Specifically, the Receiver has estimated that the net from the auction, the anticipated settlement with Pilatus, the sale of additional assets, and collection on accounts and various claims would approximately equal $2,100,000.[1]

26. With respect to other assets, the Debtor has claims against its affiliates, but the collectability of some of those causes of action is questionable. And, the Debtor has a potential recovery in the litigation asserted by Orion on its behalf against its insurer and landlords. The $2.9 million judgment against the landlords is currently on appeal and the insurance settlement proceeds are the subject of several conflicting claims. The value of these claims to the Debtor must be discounted by the likelihood of success on the merits and the time value of money.

27. Finally, the approximate $3.2 million that the Receiver is holding represents deposits made by the Debtor's customers for the purchase of airplanes and is being held in a segregated account by the Receiver in trust for the customers pending a determination that these

---

[1]  This estimate assumes the anticipated settlement with Pilatus is effectuated; if it is not, the recovery would most likely be less.

customers will obtain the benefit of their bargain and receive the aircraft that they have ordered pursuant to the terms of their agreements with the Debtor.

28. Simply stated, the Debtor lacks equity in the Property and Bank of the West is undersecured.

29. Lack of equity is not necessarily fatal under § 362(d)(2) if the Debtor can prove that the Property is necessary to an effective reorganization. *In re Steffens,* 275 B.R. at 578. To succeed on such an argument, Debtor must show that there is a reasonable prospect of a successful organization within a reasonable period of time. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.,* 484 U.S. 365, 375-76 (1988). The mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible. *Coones v. Mutual Life Ins. Co.,* 168 B.R. 247 (D. Wyo. 1994).

30. In this case, Debtor was engaged in the business of selling Pilatus aircraft. Pilatus has revoked the Debtor's franchise agreement so there is no possibility of reorganization around selling and repair Pilatus aircraft. Upon information and belief, Pilatus has entered into a new dealership agreement with a third party for this region. Further Debtor has no unencumbered resources with which to attempt to sell its aircraft parts. Finally, the Debtor's business has been shut down; its employees have been terminated; it no longer has a lease. There is nothing to reorganize. As such, none of the Property is necessary to a reorganization.

**B.     For Cause, Including Lack of Adequate Protection - § 362(d)(1)**

31. With respect to Section 362(d)(1), "cause" exists to lift the stay due to the lack of adequate protection for the Lender.

32. A creditor may demonstrate lack of adequate protection through lack of an equity cushion. *In re Steffens,* 275 B.R. 570, 577 (Bankr. D. Colo. 2002). Lack of adequate protection is also indicted by other evidence of "…the increasing amount of the secured debt through interest accruals or otherwise, [and] the nonpayment of taxes or other senior liens…" *In re Anthem Communities/RBG, LLC,* 267 B.R. 867, 871 (Bankr. D. Colo. 2001).

33. The Lender is not adequately protected because the Debtor has no ability to operate or preserve and protect the Lender's collateral. Furthermore, the value of the Lender's collateral will most likely decline during the pendency of the bankruptcy.

34. The Debtor no longer has any operating business and has no ability to generate funds other than by sale of the Lender's collateral. Under these circumstances, the Lender is not adequately protected.

**C.     Debtor is Not Entitled to the Protections of the Service Members Civil Relief Act.**

35. The Debtor is a limited liability company, thus not protected by SCRA.

Wherefore the Lender respectfully requests the Court grant it relief from stay to take possession of, and sell the Property by way of reinstatement of the receiver or otherwise.

Respectfully submitted this 3rd day of May, 2018.

*/s/ Jennifer Salisbury*
Jennifer Salisbury, # 37168
MARKUS WILLIAMS YOUNG & ZIMMERMANN LLC
1700 Lincoln, Suite 4550
Denver, Colorado 80203
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jsalisbury@markuswilliams.com
Attorneys for Bank of the West.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 3rd day of May, 2018, I caused a true and correct copy of the foregoing BANK OF THE WEST'S MOTION FOR RELIEF FROM STAY and proposed order to be electronically filed and served via CM/ECF pursuant to L.B.R. 9013-1 and 9036-1 on the following:

| | |
|---|---|
| Donald D. Allen<br>dallen@markuswilliams.com | David Wadsworth<br>dwadsworth@wwc-legal.com |
| Lacey S. Bryan<br>lbryan@wwc-legal.com | Duncan E. Barber<br>dbarber@sbbolaw.com |
| Aaron J. Conrardy<br>aconrardy@wwc-legal.com | Caroline C. Fuller<br>cfuller@fwlaw.com |
| James T. Markus<br>jmarkus@markuswilliams.com | Donald R. Kirk<br>dkirk@carltonfields.com |
| Alan K. Motes<br>Alan.Motes@usdoj.gov | John M. Tanner<br>jtanner@fwlaw.com |
| | Matthew M. Wolf<br>mwolf@allen-vellone.com |

      *s/ Jessica Anderson*
      Jessica Anderson
      For Markus Williams Young & Zimmermann LLC