# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Tempus Aircraft Sales and Service, LLC | ) | Case No. 18-13507-MER |
| Tax ID / EIN: 45-3166415, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S
### MOTION FOR ORDER APPROVING DEBTOR IN POSSESSION FINANCING

The United States Trustee ("UST"), through counsel, submits this objection to the Debtor's Motion for Order Approving Debtor in Possession Financing (the "Motion") and states as follows:

1. On April 26, 2018, Tempus Aircraft Sales and Service, LLC (the "Debtor") commenced this chapter 11 case.

2. As of the Petition Date, the Debtor's property was in the possession of a receiver, Cordes & Co. On the Petition Date, the Debtor filed a motion to compel turnover of estate property by the receiver. Bank of the West objected to that motion and filed a motion to excuse turnover as well as a motion for relief from the automatic stay. The Court has scheduled an evidentiary hearing on May 25, 2018, concerning the Debtor's motion to compel turnover, Bank of the West's motion to excuse turnover, and Bank of the West's motion for relief from the automatic stay.

3. On May 3, 2018, the Debtor filed its Motion for Order Approving Debtor in Possession Financing (the "Motion"), through which the Debtor requests authority to borrow up to $100,000 from JGG 2011 Irrevocable Trust u/t/d September 8, 2011 (the "JGG Trust") under the terms and conditions contained in the proposed order, form of Promissory Note, and form of Security Agreement submitted with the Motion.

4. JGG Trust is an insider. As acknowledged in the Motion, JGG Trust is a 50% member of the Debtor. The Trustee of JGG Trust is John G. Gulbin, III. Mr. Gulbin is also the Manager of the Debtor.

### Objection

5. The UST objects to the relief requested in the Motion and form of proposed order for the following reasons:

6. The Motion should not be granted if the Court determines that the receiver should be excused from turning over property of the estate. That is, the Motion should only be granted, if at all, if the Debtor will be a debtor-in-possession with a need for postpetition financing to operate its business and manage the estate's affairs.

7. However, even if the Court requires turnover by the receiver such that the Debtor will operate its business and manage its affairs, Debtor's own figures demonstrate that the Debtor might not actually need postpetition financing. Specifically, according to the Cash Flow Projections submitted by the Debtor on May 16, 2018 (Docket No. 72-1), the Debtor will have a beginning cash balance of $50,000 as of June 1, 2018, and an ending cash balance of $755,273 as of the end of June. The Cash Flow Projections do not even contemplate borrowing and contain no line item for loan proceeds.

8. Paragraph 15 of the Motion states that the proposed postpetition loan is an arms-length transaction. It is by definition not an arms-length transaction, as the same person negotiated the loan on behalf of both the lender and borrower. Finding E.(4) in the proposed order should be modified to delete the finding that the transaction is an arms-length transaction.

9. Because Mr. Gulbin controls both the Debtor and TGG Trust, some events of default should be removed. For instance, an event of default is that "[a]ny representation made hereunder shall prove to have been false in any material respect when made . . . ." Motion at ¶ 9(h)(ii). Obviously, Mr. Gulbin controls whether a representation by the Debtor is false. Likewise, Mr. Gulbin controls whether the Debtor submits financial and operational documents. *See* Motion at ¶ 9(h)(v). Also, termination of the exclusivity period should not be a default, as a default would essentially be inevitable upon the passage of time. If extending the exclusivity period prevents a default, Mr. Gulbin controls whether the Debtor seeks such an extension.

10. Under the Security Agreement, simply selling any property is also a default. *See* Security Agreement at § 7.01. The Debtor intends to sell assets as part of its ordinary business should it obtain turnover from the receiver and would, therefore, immediately be in default. In fact, a motion to sell assets under § 363 is pending as well.

11. In the event of a default, TGG Trust should not be granted automatic relief from the automatic stay to exercise remedies as currently contemplated in ¶ 9(i) of the Motion. *See* L.B.R. 4001-2(a)(2)(H).

12. TGG Trust's lien should not attach to causes of action under chapter 5 of the Bankruptcy Code. *See* L.B.R. 4001-2(a)(2)(J).

13. TGG Trust's superpriority claim would be subject to professional fee claims under §§ 330 and 331 "with respect to professionals retained by the Debtor." Motion at ¶ 9(k). The same carve-out should apply to professionals employed by a creditors' committee, if any.

14. The Debtor states that it has made diligent efforts to obtain unsecured financing under § 503(b)(1) and that the Debtor is unable to obtain alternative financing under § 364(a) and (b). *See* Motion at ¶¶ 11-12. The Debtor should explain its efforts to obtain financing from another source under either of those sections.

WHEREFORE, the UST objects to the Motion for the reasons set forth above and requests such other and further relief as the Court deems appropriate.

Dated: May 17, 2018

                                            PATRICK S. LAYNG
                                            UNITED STATES TRUSTEE

                                            /s/ Alan K. Motes
                                            By: Alan K. Motes, #33997
                                            Trial Attorney for the U.S. Trustee
                                            1961 Stout Street, Suite 12-200
                                            Denver, Colorado 80294
                                            (303) 312-7999 telephone
                                            (303) 312-7259 facsimile
                                            Alan.Motes@usdoj.gov