## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-13507-MER |
| Tempus Aircraft Sales and Service, LLC ) | Chapter 11 |
| ) | |
| ) | |
| Debtor ) | |

## BANK OF THE WEST'S OBJECTION TO MOTION FOR ORDER APPROVING DEBTOR IN POSSESSION FINANCING

Bank of the West ("**Bank**"), by and through its undersigned counsel, hereby files its Objection to Motion for Order Approving Debtor in Possession Financing.

### I. SUMMARY OF ARGUMENT

1. The proposed DIP Lender, the 50% owner of the Debtor, is an insider. Jack Gulbin controls the Lender as trustee, as well as the Debtor as its manager. The DIP Loan is an insider transaction that is not necessary to support the business operations, but instead would provide the insider with liens and superiority status ahead of all creditors for what should be capital contribution. The Bank is unaware of any precedent where an insider has been permitted to make a super priority DIP loan for the prime purpose of funding Debtor's attorney, an expense normally funded through working capital or capital contribution.

### II. PROCEDURAL BACKGROUND

2. The Debtor filed its voluntary Chapter 11 petition on April 26, 2018.

3. On May 3, 2018, the Court held a preliminary hearing on the Motion to Excuse Turnover filed by Bank of the West, and the Debtor's Motion To Compel Turnover of Estate Property. The court orally ruled that books and records were to be turned over to the Debtor and

{Z0221804/2 }

that the Debtor was to be given supervised access to its facility, but that all other property would remain with the receiver pending an evidentiary hearing.

4. On May 4, 2018, the Court entered its Order and Notice of Evidentiary Hearing at Docket #49 ("**Order**"). The Order set the evidentiary hearing for May 25, 2018.

5. On May 3, 2018, Debtor filed its Motion for Approving Debtor in Possession Financing (the "**Motion**"). The Motion seeks approval of borrowing up to $100,000, with the first $50,000 of that amount to be paid to Debtor's attorneys as a retainer.

### III. ARGUMENT

6. The proposed DIP Lender, JGG 2011 Irrevocable Trust ("**Gulbin Trust**") asserts that it is a 50% member of the Debtor. The Gulbin Trust is controlled by its Trustee Jack Gulbin, also known as John G. Gulbin ("**Gulbin**"). Gulbin is also the manager of the Debtor. The proposed postpetition loan agreement ("**Insider Loan**") between the Gulbin Trust and the Debtor was negotiated with Gulbin on both sides of the transaction.

7. There are two key reasons why the Gulbin postpetition loan should not be approved.

8. First, the Insider Loan is not necessary for the Debtor's business purposes. There is no indication that the Insider Loan is to fund a reorganization. Rather, the Insider Loan is a disguised capital contribution designed solely to benefit Gulbin by allowing him to protect his personal interests by giving him a senior lien and a superpriority claim at the expense of the estate and control over the process.

9. Second, the terms of the Insider Loan are improper. The interest rate of 12% and default rate of 17% are unusually high and serve only to benefit Gulbin at the expense of the estate. Other terms of the Insider Loan, such as requiring the Debtor's attorney to refund any

unused retainer to the insider lender, rather than to the Debtor create a conflict of interest for Debtor's counsel. Debtor's counsel will not be disinterested because they will be indebted to the insider lender. Further, the Insider Loan requires the Debtor to pay interest monthly, but the Debtor has no income with which to make monthly payments. Finally, the statement in the Motion that the insider loan is an arms-length transaction is false on its face.

10. Neither the Debtor nor the insider lender have provided a budget for the items that the DIP loan is supposed to pay. The sole specific expense that the proposed DIP loan will pay is a large postpetition retainer for the Debtor's counsel.

> "The first $50,000 of the DIP Loan shall be used to fund the retainer of Debtor's legal counsel, Wadsworth Warner Conrardy, P.C." (the "**Firm**")
>
> (Motion, p. 4 Section 9(j)

11. Where the sole stated purpose of a loan from an insider is to fund the debtor's attorneys' fees and other professional fees, such a loan would be a disqualifying event for the Debtor's attorneys, causing them to lack disinterestedness. The Firm's total dependence on Jack Gulbin, and his trust, for payment of its fees means the firm would in essence be working for Jack Gulbin and not the Debtor's estate or for the benefit of the Debtor's creditors.

12. Specific offensive and improper terms of the Insider Loan, and the reasons they are improper, include the following:

    A.    Interest rate at 12% with a default rate of 17%. These are above market rates and Debtor has provided no justification for such rates.

    B.    Maturity Date includes the date of appointment of a chapter 11 trustee. This deprives creditors of a remedy that sorely needed in this case.

    C.    Events of default include termination of the exclusivity period and the granting of any motion to for an order appointing a trustee or examiner. These terms make it clear that the insider lender wants to control the

reorganization process and thus deprives creditors of the opportunity to file competing plans or seek appointment of a trustee.

D. Debtor's counsel is required to refund any unused retainer to the insider lender instead of the Debtor. This creates a conflict of interest for Debtor's counsel because they become a debtor to the insider lender.

E. The insider lender shall have a superpriority claim with priority over any and all expenses specified in 11 U.S.C. § 503(b) and 507(b). This deprives the Bank of its right to claims under 11 U.S.C. § 507(b).

F. The insider lender shall receive a senior lien on property not subject to the Bank's lien. There is no property of the Debtor that is not subject to the Bank's lien.

G. The insider lender shall receive a junior lien on property subject to the Bank's liens. This impairs the Bank's collateral by introducing a competing creditor without the protections of an intercreditor agreement that would normally be negotiated.

13. The Motion itself incorrectly states that the terms of the Insider Loan were negotiated as provided by 11 U.S.C. § 364(e) and represent arms-length transactions. This is simply not true. There were no negotiations. Jack Gulbin is the representative of the Lender but at the same time signed the proposal documents for the Debtor.

14. The Motion also states that the Insider Lender is entitled to the protections of 11 U.S.C. § 364(e) yet never details how a transaction negotiated by Jack Gulbin on both sides could possibly be in good faith.

15. Finally Debtor argues that its decision to enter into the Insider Loan represents its sound business judgment. As detailed below due to the higher scrutiny that insider transactions are subject to, the Debtor is not entitled to the presumption of reasonable business judgment in entering into the proposed Insider Loan

## IV. LEGAL AUTHORITY

16. The insider funding of the postpetition loan to be used to pay debtors attorneys' fees impairs such attorneys' disinterestedness.

> One of the roles of an attorney for a debtor in possession is to act, in effect, as a counterweight to the insiders' tendency to favor their interests above others in the reorganization process. **This role is consistent with the notion that whatever benefits the officers, directors and shareholders is not necessarily beneficial to the estate, and vice versa.** Therefore, in the formulation of a plan of reorganization and in dealing with the affairs of the reorganization in general, counsel must act with the utmost loyalty to the debtor, and hence, to its estate, free from the danger of his loyalties shifting to other parties. (Emphasis added)

*In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 335 (Bankr. N.D. Ohio 1984), *aff'd*, 64 B.R. 600 (N.D. Ohio 1986). *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 470 (D. Utah 1998)

17. Where payment of a retainer by a third party insider is proposed, the courts have adopted a multi-part test regarding disinterestedness. *See In re EZ Links Golf, LLC*, 317 B.R. 858, 863 (Bankr. Colo. 2004). The test to serve as counsel who has received payment from the Debtor's insiders requires:

> (1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;
>
> (2) the debtor must expressly consent to the arrangement;
>
> (3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;
>
> (4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;
>
> (5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*Id*. at 863.

18. In this case it appears that the arrangement was not fully disclosed to the Court at the outset of the Debtor's bankruptcy case.

19. On the Petition Date, the Firm filed an application to be employed ("**Application**") stating that it had received a prepetition retainer from the Debtor and its fees and costs were paid in the "ordinary course". In fact, the Firm received its prepetition retainer directly from Jack Gulbin. The firm has not disclosed the date or dates the Firm received payment or the dates of any "ordinary course" transactions between the Debtor and the Firm. The Firm did not disclose that an insider was proposing to make a loan to the Debtor to pay the Debtor's attorney's fees. The firm did not disclose that an insider paid the Firm's prepetition retainer.

20. The Application does not discuss when the Debtor's insider first proposed making a postpetition loan that would be used to fund the Firm's retainer for the bankruptcy case. The application does not state that the Debtor has expressly consented to the arrangement.

21. Further, the Firm has failed to state that the proposed insider DIP Lender has retained independent legal counsel or understands that the Firm's duty of undivided loyalty is owed exclusively to the Debtor.

22. The Firm has failed to make complete disclosure of the factual and legal relationship between Gulbin as the third party payer/insider, the Debtor, the respective attorneys and their contractual arrangement concerning the fees at the outset of the debtor bankruptcy representation.

23. Finally the Debtor's proposed counsel has not demonstrated or represented to the Court the absence of facts which would otherwise create non-disinterestedness, actual conflict or impermissible potential for a conflict of interest.

24. Disinterestedness depends on the identity and status of the payor, the relationship of the payor to the debtor and to other parties in interest and the circumstances surrounding the payment of the retainer. *In re Rabex Amuru of North Carolina, Inc.* 198 B.R. 892 (Bankr. M.D. N.C. 1996). There has not been sufficient disclosure regarding these elements.

25. If the insider wants to fund expenses of the Debtor, any such funding should be treated as a capital contribution rather than a loan.

> "A capital contribution simply recognizes that the principal/insider will not be refunded any payments made, except upon future success of the company. The effect of such a contribution is to remove the otherwise surreptitious taint which attaches to a direct payment."

*In re Lotus Prop.*, L.P. 200 B.R. 388, 395 (Bankr. C.D. Cal. 1996).

26. Nor is Debtor entitled to rely on the business judgment rule to support its decision to pursue the Insider DIP Loan. The business judgment rule governs unless the opposing party can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors decision was uninformed, (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent. *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. Del. 2011).

27. Here Debtor is not entitled to the benefit of the business judgment rule because (a) the Debtor's management was not disinterested or independent and (b) the Debtor's management was grossly negligent.

28. The Debtor's manager, Gulbin, was not disinterested because Gulbin owns and controls the proposed Insider DIP Lender.

29. The Debtor was grossly negligent because it did not negotiate standard estate favorable terms and exclusions that are typical in a DIP Loan.

30. Since the Debtor is not entitled to the benefit of the business judgment rule, the court must apply the "entire fairness" standard. This requires proof of fair dealing and fair price and terms. *Moran v. Household Intl, Inc.* 500 A.2d 1346 (Del. Supr. 1985), cited in *Los Angeles Dodgers*, 457 B.R. at 313.

31. The Debtor has not established that the terms of the Insider Loan are entirely fair, particularly given the above market interest rate and the overly broad default provisions.

32. Moreover, the Bankruptcy Code singles out insiders as parties that are subject to a greater level of scrutiny than other persons.

> "[It is a] general proposition that, in bankruptcy claims litigation, insider transactions must be "subjected to rigorous scrutiny" and the insider claimant has the additional burden of proving "the good faith of the transaction" and "its inherent fairness." *Pepper v. Litton*, 308 U.S. 295, 306 (1939).

33. The "rigorous scrutiny" standard required by the United States Supreme Court in *Pepper v. Litton* remains applicable as recently as 2010.

> "[T]he particularized disallowance under § 502(b)(4) of claims for services of debtors' attorneys and other insiders is a manifestation and expansion of the rule of *Pepper v. Litton* that insider dealings with a debtor are "subjected to rigorous scrutiny" and that the burden is on the insider "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the [debtor] and those interested therein." *Pepper v. Litton*, 308 U.S. 295, 306, 60 S. Ct. 238, 84 L. Ed. 281 (1939); *Brewer v. Erwin & Erwin, P.C. (In re Marquam Inv. Corp.)*, 942 F.2d 1462, 1465-66 (9th Cir. 1991).
>
> Indeed, the legislative history of the 1978 Bankruptcy Code is explicit that *Pepper v. Litton* and related cases retain vitality under the Code as the basis for § 510(c). … Thus, the rule of *Pepper v. Litton* is perpetuated in the Bankruptcy Code."

*In re Siller*, 427 B.R. 872, 881-82 (Bankr. E.D. Cal. 2010). (Reversed on other grounds at *Cotchett, Pitre McCarthy v. Siler*, 2012 U.S. Dist. LEXIS 65928)

34. It is safe to say that Gulbin and his trust are insiders of the Debtor either under the specific wording of the Bankruptcy Code or on a non-statutory basis.

> "Because the Code's definition of an insider is not exclusive, courts must necessarily develop the factors that may render a party a non-statutory insider…[A]t bottom, this category includes those individuals or entities whose business or professional relationship with the debtor "compels the conclusion that the individual or entity has a **relationship with the debtor, close enough to gain an advantage attributable simply to affinity** rather than to the course of business dealings between the parties." *In re Friedman*, 126 B.R. at 70 (9th Cir. BAP 1991) (emphasis added).

35. Put another way, a non-statutory insider is one "who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Id.* (quoting H. R. Rep. No. 95-595, 95th Cong. 1st Sess. 312 (1977), <u>reprinted in</u> U.S. Code Cong. & Admin. News, 1978, pp. 5787, 5810, 6269).

36. In determining whether a party qualifies as a non-statutory insider, courts look at the closeness of the parties, and the degree to which the creditor is able to exert control or influence over the debtor. *In re Entm't Acquisition Partners, Inc.*, 319 B.R. at 626 (9th Cir. BAP

{Z0221804/2}  9

2004; *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 (9th Cir. BAP 1987). The primary test of a non-statutory insider is whether the creditor "exercises such control or influence over the debtor as to render their transaction not arms-length." *Id.*

37. Further, disclosure alone is not sufficient to satisfy the court's higher degree of scrutiny of insider transactions. In *American United,* the United States Supreme Court held that mere disclosure does not satisfy the court's need for scrutiny of insiders who are also creditors. *American United Mut. Life Ins. Co. v Avon Park*, 311 U.S. 138, 144 (USSC 1940) (fiscal agent of the Debtor did not disclose it was a creditor of the debtor). The Court noted disclosure was "the very minimum requirement" for fair dealing, in order for plan to be confirmed. 311 U.S. at 145. The Court then stated: "…we have emphasized that full disclosure is the *minimum* requirement in order not to imply that it is the limit of the power and duty of the bankruptcy court in these situations. . . . The responsibility of the court entails scrutiny of the circumstances surrounding the acceptances, the special or ulterior motives which may have induced them, the time for acquiring the claims so voting, the amount paid therefor, and the like." *Id*. See *In re Columbia Falls Special Improv. Dist. No. 25*, 143 B.R. 750, 766 (Bankr. D. Mont. 1992).

38. The Insider Loan simply fails the rigorous scrutiny test mandated by the United States Supreme Court in *Pepper v Litton*.

39. Finally, and at the most basic level, there has been no demonstration of any operating or other administrative costs the Debtor would need to incur that necessitates postpetition financing. As stated at the first day hearing, the business has shut down, the Pilatus dealer agreement has been cancelled and most employees have ceased employment. Quite simply there is nothing to reorganize and the Debtor has no need for an insider postpetition loan.

WHEREFORE, Bank of the West respectfully requests the Court deny the Debtor's Motion for Order approving Debtor in Possession Financing.

Respectfully submitted this 17th day of May, 2018.

                                      MARKUS WILLIAMS
                                      YOUNG & ZIMMERMANN LLC

                                      */s/Donald D. Allen*
                                      Donald D. Allen, #10340
                                      1700 Lincoln Street, Suite 4550
                                      Denver, Colorado 80203-4505
                                      Telephone (303) 830-0800
                                      Facsimile (303) 830-0809
                                      Email: dallen@markuswilliams.com
                                      Attorneys for Bank of the West

# CERTIFICATE OF SERVICE

      I hereby certify that on this 17th day of May, 2018, a true and correct copy of the forgoing BANK OF THE WEST'S OBJECTION TO MOTION TO APPROVE DEBTOR IN POSSESSION FINANCING was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1 on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and the L.B.R. as indicated below:

**VIA CM/ECF**

Duncan E. Barber
dbarber@sbbolaw.com

Lacey S. Bryan
lbryan@wwc-legal.com

Aaron J. Conrardy
aconrardy@wwc-legal.com

Caroline C. Fuller
cfuller@fwlaw.com

Donald R. Kirk
dkirk@carltonfields.com

Alan K. Motes
Alan.Motes@usdoj.gov

John M. Tanner
jtanner@fwlaw.com

US Trustee
USTPRegion19.DV.ECF@usdoj.gov

David Wadsworth
dwadsworth@wwc-legal.com

Thomas E.M. Werge
tom@werge.law

Matthew M. Wolf
mwolf@allen-vellone.com

                                               /s/Serina R. Schaefer
                                           Serina R. Schaefer, Legal Assistant