# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TEMPUS AIRCRAFT SALES AND | ) | Case No. 18-13507 MER |
| SERVICE, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

### TRUSTEE'S APPLICATION TO EMPLOY GODFREY | JOHNSON, P.C. AS SPECIAL COUNSEL ON A CONTINGENT FEE BASIS

Tom Connolly, the trustee herein ("Trustee"), hereby applies to this Court for authorization to employ Godfrey | Johnson, P.C. ("G&J") as special counsel for the estate pursuant to 11 U.S.C. § 327(e) on a contingent fee basis. In support hereof, Trustee states as follows:

1. Tempus Aircraft Sales and Service, LLC ("Debtor") filed its Chapter 11 bankruptcy on April 26, 2018. Tom H. Connolly was appointed as Chapter 11 trustee ("Trustee") on June 26, 2018. This case was converted to Chapter 7 on August 9, 2018 and Trustee was reappointed as Chapter 7 trustee on that date.

2. G&J was previously engaged by Orion Air Group Holdings, LLC (hereinafter "Orion"), a member of debtor, and other related parties in connection with the matters on which G&J is to be engaged by Trustee. Those matters grew out of damage to aircraft parts resulting from a structural failure of rented commercial hangar space that was owned by Arapahoe Airport Joint Venture #1 and Arapahoe Airplaza JV #1 (hereinafter "the Arapahoe defendants") and leased to Orion. The majority of the damaged aircraft parts however were owned by Debtor and stored within the hangar space leased by Orion. G&J was retained by Orion on an hourly fee basis to litigate against the Arapahoe defendants and Travelers Indemnity Company to recover for damages to the Debtor's property for the benefit of Debtor. During the litigation, Travelers settled pursuant to a confidential agreement joined by Debtor. Travelers has not performed under the terms of its settlement agreement as of the date of this Application. Subsequent to the Travelers settlement the suit continued against the Arapahoe defendants in the name of Orion as bailee and sole plaintiff seeking damage to the aircraft parts belonging to Debtor. At trial Orion's manager testified that the claims, though nominally brought in Orion's name, were asserted on behalf of Debtor.

3. G&J was successful in obtaining a money judgment of nearly $3 million (without interest or costs) against the Arapahoe defendants, however the Arapahoe defendants filed a timely appeal to the Colorado Court of Appeals which remains pending as of the date of this Application. Orion has now entered into a written agreement with the Trustee assigning all of its right, title and interest in the litigation, including the recovery of damages from the Arapahoe defendants and

proceeds still due from Travelers, to the bankruptcy estate. As a result of the assignment of the interests of Orion to Debtor Orion no longer has a pecuniary interest in such recoveries.

4. Trustee now wishes to engage G&J on behalf of the estate to further the estate's interests in the litigation while continuing nominally to represent Orion as the judgment creditor of the Arapahoe defendants, as well as the named insured of Travelers and as one of the settling parties in privity with Travelers.

5. Pursuant to 11 U.S.C. § 327(e), the Trustee may employ, with this Court's approval, for a specified special purpose, "an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

6. "Section 327(e) does not contain the requirement that the professional whose employment is sought must be disinterested. *See* 11 U.S.C. § 101(14). Section 327(e) requires only that the professional neither hold nor represent an interest adverse to the estate. […] Therefore, because of the more limited scope of the employment of special counsel, some connections to the case may be allowed under subsections 327(c) and (e) that would not otherwise be allowed under section 327(a)." *In re Hub Bus. Forms, Inc.*, 146 B.R. 315, 319 (Bankr. D. Mass. 1992).

7. G&J's pre-petition representation of Orion as nominal plaintiff and resulting pre-petition attorney's lien does not disqualify the firm from representing the Trustee in the litigation. The interests of the estate and G&J with respect to successful conclusion of the litigation including the appeal are perfectly aligned. G&J holds no interest adverse to the Estate with respect to the limited scope of the matter for which G&J is to be employed. *See In re Johnson*, 397 B.R. 486 (Bankr. E.D. Cal. 2008) (recognizing that employment of a previously employed attorney for a by a subsequently appointed trustee is appropriate under certain circumstances). Furthermore, given G&J's familiarity with the record and issues in the litigation, G&J's employment as special counsel is in the best interest of the Estate.

8. As stated in the Affidavit of Brett Godfrey, attached hereto and incorporated herein by this reference, to the best of his knowledge, G&J does not hold or represent any interest adverse to the Trustee on the matters for which it is to be employed except as stated therein, and G&J does not have any connection or conflict of interest with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee's Office, or any person employed in the Office of the United States Trustee, on the matters on which G&J is to be engaged as special counsel.

9. As stated in the Affidavit of Brett Godfrey, G&J is not a creditor, equity security holder or insider of the debtor and does not hold or represent an interest adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason; except, G&J

2

holds a statutory attorneys lien for the amount of unpaid costs and fees G&J and third-party vendors were owed as of the petition date in this case, including sums owed to two other attorneys who are not directly affiliated with G&J: Mark Stang, Esq. and Fred Begy, Esq. G&J's attorney's lien was subsequently reduced to a judgment and has been amended by supplemental filings for legal fees and unpaid costs that have been advanced. G&J will retain the lien rights but has agreed to subsume the unpaid portion of its pre-engagement fees due it into the proposed contingency fee retaining only a lien for unreimbursed expenses due G&J and fees and expenses due third party vendors or unaffiliated attorneys.

10. G&J will charge a sliding scale contingency fee for further work as special counsel on the subject litigation in accordance with the Contingency Fee Agreement a copy of which is attached. No fees and expenses shall be paid to G&J except as authorized by the Court.

11. G&J has not received a post-petition retainer from the Debtor or Trustee.

12. G&J has not made any agreement or reached any understanding with any other person for a division of any compensation which may be awarded herein, except as such compensation will be shared or otherwise distributed among the employees and owners of G&J.

13. The Trustee believes that G&J is well-qualified to represent the Trustee in the matters in which it is to be employed as special counsel and its familiarity with those matters is of great value to the Estate.

14. Employment of G&J as special counsel is therefore proper pursuant to 11 U.S.C. § 327(e).

**WHEREFORE**, Trustee respectfully requests the Court to enter an Order, the form of which is submitted herewith, authorizing Trustee to employ G&J as special counsel for the estate on a contingent fee basis pursuant to the terms of the Contingency Fee Agreement attached hereto and 11 U.S.C. § 327(e), and for such other and further relief as the Court deems just and proper.

Dated: August 10, 2018.                    Respectfully submitted,

                                           */s/ Tom H. Connolly*
                                           Tom H. Connolly, Chapter 11 Trustee
                                           950 Spruce Street, Suite 1C
                                           Louisville, CO 80027
                                           Telephone: (303) 661-9292
                                           Facsimile: (303) 661-9555
                                           tom@clpc-law.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 10, 2018, I served by prepaid first class mail a copy of the forgoing document entitled **TRUSTEE'S APPLICATION TO EMPLOY GODFREY | JOHNSON, P.C. AS SPECIAL COUNSEL ON A CONTINGENT FEE BASIS,** together with the **NOTICE** and **PROPOSED ORDER** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed. R. Bankr. P. and the Local Bankruptcy Rules at the following addresses:

Attorney Lacey S. Bryan via CM/ECF
Attorney Aaron J. Conrardy via CM/ECF
United States Trustee via CM/ECF
Attorney David Wadsworth via CM/ECF
Attorney Alan K. Motes via CM/ECF
Attorney Donald D. Allen via CM/ECF
Attorney Duncan E. Barber via CM/ECF
Attorney Bruce J. Berman via CM/ECF
Attorney Caroline C. Fuller via CM/ECF
Attorney Donald R. Kirk via CM/ECF
Attorney James T. Markus via CM/ECF
Attorney Jennifer M. Salisbury via CM/ECF
Attorney LeElle Slifer via CM/ECF
Attorney John M. Tanner via CM/ECF
Attorney Thomas E.M. Werge via CM/ECF
Attorney Jeffrey C. Wisler via CM/ECF
Attorney Matthew M. Wolf via CM/ECF
Attorney Daniel E. Rohner via CM/ECF
Attorney Jan L. Hammerman via CM/ECF

Tempus Aircraft Sales and Service, LLC
12260 East Control Tower Road
Englewood, CO 80112

*/s/ Christy Bevel*
Christy Bevel, Legal Assistant

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:                                         )
                                               )
TEMPUS AIRCRAFT SALES AND                      )   Case No. 18-13507 MER
SERVICE, LLC,                                  )   Chapter 11
                                               )
                                               )
            Debtor.                            )

## AFFIDAVIT OF BRETT GODFREY IN SUPPORT OF APPLICATION TO EMPLOY GODFREY | JOHNSON, P.C. AS SPECIAL COUNSEL TO THE ESTATE

STATE OF COLORADO        )
                         ) ss.
COUNTY OF DOUGLAS        )

I, Brett Godfrey, of the firm of Godfrey | Johnson, P.C. ("*G&J*"), being first duly sworn upon my oath, hereby state, depose and affirm the following:

1. G&J is engaged in the practice of law and maintains an office at 9557 South Kingston Court, Englewood, Colorado 80112.

2. I am a shareholder of G&J and an attorney licensed to practice law in the State of Colorado.

3. The firm's services will consist of representation of the bankruptcy estate for the specific purposes stated in the trustee's application and the attached Contingency Fee Agreement.

3. G&J is a disinterested person under 11 U.S.C. §§ 101(14), and does not have, to the best of my knowledge, any connection with the trustee, debtor, debtor's creditors, or any other party in interest or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee; except, G&J was previously engaged by Orion Air Group Holdings, LLC (hereinafter "Orion"), a member of debtor, and other related parties in connection with the matters on which G&J is to be engaged by trustee. Those matters grew out of damage to aircraft parts resulting from a structural failure of rented commercial hangar space that was owned by Arapahoe Airport Joint Venture #1 and Arapahoe Airplaza JV #1 (hereinafter "the Arapahoe defendants") and leased to Orion. The majority of the damaged aircraft parts however were owned by debtor and stored within the hangar space leased by Orion. G&J was retained by Orion on an hourly fee basis to litigate against the Arapahoe defendants and Travelers Indemnity Company to recover for damages to the debtor's property for the benefit of debtor. During the litigation, Travelers settled pursuant to a confidential agreement joined by debtor. Travelers has not performed under the terms of its settlement agreement as of the date of this Affidavit. Subsequent to the Travelers Settlement the suit continued against the Arapahoe defendants in the name of Orion as bailee and sole plaintiff seeking damage to the aircraft parts belonging to debtor. At trial Orion's manager testified that the claims, though nominally brought in Orion's name, were asserted on behalf of debtor. G&J was successful in obtaining a money

judgment of nearly $3 million (without interest or costs) against the Arapahoe defendants, and the Arapahoe defendants filed a timely appeal to the Colorado Court of Appeals which remains pending as of the date of this Affidavit. Orion has now entered into a written agreement with the trustee assigning all of its right, title and interest in the litigation, including the recovery of damages from the Arapahoe defendants and proceeds still due from Travelers, to the bankruptcy estate. As a result of the assignment of the interests of Orion to debtor Orion no longer has a pecuniary interest in such recoveries. Trustee now wishes to engage G&J on behalf of the estate to further the estate's interests in the litigation while continuing nominally to represent Orion as the judgment creditor of the Arapahoe defendants, as well as the named insured of Travelers and as one of the settling parties in privity with Travelers.

4.  G&J is not a creditor, equity security holder or insider of the debtor and does not hold or represent an interest adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason; except, G&J holds a statutory attorneys lien for the amount of unpaid costs and fees G&J and third-party vendors were owed as of the petition date in this case, including sums owed to two other attorneys who are not directly affiliated with G&J: Mark Stang, Esq. and Fred Begy, Esq. G&J's attorney's lien was subsequently reduced to a judgment and has been amended by supplemental filings for legal fees and unpaid costs that have been advanced. G&J will retain the lien rights but has agreed to subsume the unpaid portion of its pre-engagement fees due it into the proposed contingency fee retaining only a lien for unreimbursed expenses due G&J and fees and expenses due third party vendors or unaffiliated attorneys.

5.  G&J does not, to the best of my knowledge, and insofar as I have been able to ascertain, hold or represent an interest adverse to trustee or the estate in matters upon which G&J is to be engaged.

6.  Pursuant to the attached Contingency Fee Agreement G&J will charge a sliding scale contingency fee for further work as special counsel on the subject litigation.

FURTHER AFFIANT SAYETH NOT.

_____
Brett Godfrey

SUBSCRIBED AND SWORN TO before me this ___ day of August, 2018, by Brett Godfrey.

Witness my hand and official seal.

My Commission expires: March 7, 2020

_____
Notary Public

Sandi Cooke
Notary Public
State of Colorado
Notary ID 20004006954
My Commission Expires: March 7, 2020

2

## CONTINGENCY FEE AGREEMENT
### READ CAREFULLY BEFORE SIGNING

THIS AGREEMENT is made between **Orion Air Group Holdings, LLC** (hereinafter "Orion"), both directly and by and through the assignee of all of Orion's rights, title and interest in any proceeds that may be obtained in connection with that litigation styled *Orion Air Group Holdings, LLC v. Arapahoe Airport Joint Venture #1 and Arapahoe Airplaza JV#1*, originally lodged in the District Court for the City and County of Denver, Colorado, Case No. 2016 CV 33113), which is presently on appeal following a verdict in favor of Orion (hereinafter "the Civil Action"), the duly appointed **Trustee in Bankruptcy for Tempus Aircraft Sales & Service, LLC, (Tom Connolly)** (hereinafter referred to as "Clients"), and GODFREY | JOHNSON, P.C. (hereinafter "Attorneys"). The Clients hereby agree to retain the Attorneys to perform the legal services mentioned in paragraph 2 below. The Attorneys hereby agree to perform the services faithfully and with due diligence.

1. **Background Recitals.** For the purpose of providing context for the anticipated future approval by the United States Bankruptcy Court of this Agreement, the following general recitals are incorporated, but are neither an exclusive recitation of background fact nor intended to constitute any representation by any party or serve as the basis of any limitation on the powers of the parties to enter into this Agreement:

   a. **General.** The Attorneys were retained by Orion and other related parties in connection with damage to aircraft parts resulting from a structural failure of rented commercial hangar space that was owned by defendants Arapahoe Airport Joint Venture #1 and Arapahoe Airplaza JV#1 (hereinafter "the Arapahoe defendants") and leased to Orion. The majority of the damaged aircraft parts were owned by Tempus Aircraft Sales and Service, LLC (hereinafter "TASS") and stored within the hangar space leased from the Arapahoe Defendants by Orion.

   b. **No previous representation of TASS as a client.** The Attorneys have not, prior to execution of this Agreement, formed an attorney-client relationship with TASS, though TASS contributed to the legal fees related to the Civil Action and approved of the retention and actions of the Attorneys, who represented Orion in the Civil Action as a bailee of the aircraft parts belonging to TASS.

   c. **Purpose of retention and damages sought.** The pursuit of recovery for which the Attorneys were retained included pursuit of disputed insurance benefits together with tort damages and statutory damages pursuant to C.R.S. § 10-3-1101 *et seq.* under a policy of insurance issued by Travelers Indemnity Company, together with pursuit of damages from the Arapahoe defendants based upon their alleged liability under the Colorado Premises Liability Act (C.R.S. § 13-21-115). In order to pursue those damages and insurance benefits, the Attorneys were retained on an hourly fee

    basis to engage in litigation against the Arapahoe defendants and Travelers in the Civil Action.

d. **The Travelers Settlement.** During the litigation of the Civil Action, Travelers settled with the plaintiffs in the Civil Action. The settlement amount and terms of that agreement (hereinafter "the Travelers Settlement") are confidential. Travelers was released and dismissed from the Civil Action as a defendant, but it did not provide payment to plaintiffs in the Civil Action, and as of the date of this Agreement, Travelers has not performed under the terms of its settlement agreement with plaintiffs in the Civil Action. Further, as of the date of this Agreement, all settlement sums owed by Travelers remain in the possession of Travelers.

e. **Trial and judgment against the Arapahoe defendants.** Subsequent to the formation of the Settlement Agreement, the plaintiffs in the Civil Action stipulated to the dismissal of all of the claims of any plaintiff other than Orion, who sought damages for damage to the aircraft parts belonging to its bailees. Thereafter, the Attorneys were successful in obtaining a money judgment of nearly $3 million (without interest or costs) against the Arapahoe defendants, and the Arapahoe defendants filed a timely appeal to the Colorado Court of Appeals which remains pending as of the date of this Agreement.

f. **Attorneys lien.** After the entry of judgment at the conclusion of the above-referenced trial against the Arapahoe defendants, the Attorneys filed a statutory attorneys lien for the amount of unpaid costs and fees they and third-party vendors were owed, including sums owed to two other attorneys who are not directly affiliated with the Attorneys (Mark Stang, Esq. and Fred Begy, Esq.) and who work in separate law firms from the Attorneys. That lien was subsequently reduced to a judgment in favor of the Attorneys, and has been amended by supplemental filings made by the Attorneys from time to time to reflect increasing amounts owed to the Attorneys for legal fees and unpaid costs that the Attorneys have advanced. When the aforementioned lien is satisfied, portions of it will be paid to Fred Begy, Esq. and Mark Stang, Esq., based upon their respective portions thereof as of the date of the judgment mentioned above).

g. **TASS bankruptcy.** TASS petitioned for protection pursuant to the bankruptcy laws of the United States and is represented for purposes of the formation of this Agreement by Tom Connolly, Esq., the duly appointed Trustee for the bankruptcy estate of TASS (hereinafter "the Trustee"). After prevailing against the Arapahoe defendants in district court, Orion became essentially insolvent and was financially unable to continue to either fund the defense of the appeal filed by the Arapahoe defendants or fund further legal proceedings to enforce the Travelers settlement or seek damages related to any breach by Travelers of its settlement.

h. **Assignment by Orion to TASS Trustee.** Orion later entered into a written agreement with the Trustee assigning all of its right, title and interest in the Civil Action, including the recovery of damages from the Arapahoe Defendants and proceeds from Travelers, to the TASS bankruptcy estate. All of the parties to this Agreement consider that assignment to create a transfer of the interests of Orion to TASS, pursuant to which Orion no longer has a legal interest in such recovery and TASS (through the Trustee) wishes to become the client of the Attorneys while allowing the Attorneys to continue to represent the nominal legal interests of Orion as the judgment creditor of the Arapahoe Defendants, as well as the named insured of Travelers and settling party in privity with Travelers. Pursuant to the assignment described herein, the Trustee is legally empowered, subject to bankruptcy court approval, to direct the legal actions of Orion in relation to the matters set forth herein. On the basis of this merger of interests now assigned to TASS, the parties to this Agreement perceive that there is no conflict of interest between TASS and Orion and that the Attorneys shall not be required to advance any position not favorable to Orion by seeking payments for distribution only to TASS net of unpaid expenses. To the extent such a conflict may exist or is discovered to exist, it is hereby waived by the Clients.

i. **Unpaid amounts owed to the Attorneys for fees and costs.** Both Orion and TASS lack the funds to continue to pursue the insurance benefits or damages described above. Consequently, reasonably incurred costs related to experts, court reporters, mediation and other litigation-related expenses remain unpaid by Orion in the approximate amount of $118,288.53, of which approximately $34,183.49 has been advanced by the Attorneys to avoid potential professional liability on their part to various vendors, service providers or suppliers, or damage to the Attorneys' reputation. In addition, as of the date of this Agreement, the Attorneys are owed an unpaid balance (which does not include sums owed to Mr. Begy or Mr. Stang) for the Attorneys' fees (only) in the approximate amount of $72,339.50. Consequently, in addition to, and separately from, the fees and costs which may be owed by Orion to Mark Stang, Esq. or Fred Begy, Esq. (who are not parties to this Agreement), the Attorneys are owed a sum consisting of unpaid fees and costs in the amount of $106,522.99, the majority of which has been unpaid and outstanding for more than six months.

j. **Contingency fee alternative as means to continue representation by the Attorneys.** In order to provide a financial alternative that will allow Orion and TASS to continue to be represented in the appeal of the Civil Action and further legal proceedings related to the unpaid amounts owed by Travelers pursuant to the Settlement Agreement, the Attorneys have offered to convert their fee arrangement to a contingency fee based upon a sliding scale described below, which will supplant the sums they are owed as unpaid legal fees (but will not supplant or affect their right to be reimbursed for costs they have advanced or otherwise affect the Clients' obligation to pay outstanding vendor costs). Both the Trustee and Orion,

3

through its designated and authorized representative, Jack Gulbin, find the entry into a contingency fee agreement with the Attorneys to be both beneficial and the only alternative by which they can afford to continue to litigate or otherwise pursue the sums referenced above.

2. **Scope.** The scope of representation in this case is limited to recovery of judgment proceeds, by settlement or execution, against the Arapahoe defendants and their insurer(s), as well as further pursuit of sums owed by Travelers pursuant to the Settlement Agreement, which may be expanded to include pursuit of damages from Travelers for breach of its settlement obligations. The Attorneys have agreed to act as counsel of record with regard to both Orion and TASS, whose interests have been merged and reside with TASS to be exercised by the Trustee. The services that are to be rendered by Attorneys include continued defense of the appeal by the Arapahoe defendants, further appeal of that result or re-trial of the claims against the Arapahoe defendants (but not further appeal of that result following any retrial unless agreed by the Attorneys in writing), as well as further pursuit of funds owed by Travelers pursuant to the Settlement Agreement (and breach thereof, if a new civil action against Travelers is authorized by the Trustee).

3. **Computation of Fee.** The Client will pay to the Attorneys those percentages of any and all monies or other consideration recovered (including real property) on a "gross" basis, meaning prior to subtraction of costs, liens or other deductions of any kind, based upon when in the course of further representation by the Attorneys of Orion's assigned interests payments are obtained, which points are termed "Payment Points" in the table found on the table attached hereto as Exhibit A to this Agreement, which is incorporated herein by reference. The Clients hereby assign to the Attorneys that portion of any recovery realized or recovered for the Clients which represents the Attorneys' fees computed in accordance with this Agreement. The Clients are not to be liable to pay compensation otherwise than from amounts collected by the Attorneys or by the Clients directly as a direct or indirect result of the Attorneys' legal services. For the purposes of this Agreement, the fee shall not include costs or expenses, which the Clients agree to pay separately and in addition to any fee due hereunder, regardless of the outcome of the case, as otherwise provided below whether or not previously advanced by the Attorneys to any third party. Nothing in this Agreement shall affect or include any fees or costs owed to Mark Stang, Esq. or Fred Begy, Esq. Further, to the extent funds comprising reimbursement of fees or costs included within the aforementioned judgment on an attorneys' lien and owed to Mark Stang, Esq. and/or Fred Begy, Esq. (net of and in excess of the fees and costs owed to the Attorneys) are obtained or received by the Attorneys, the Attorneys are authorized to forward such payments to Mark Stang, Esq. and/or Fred Begy, Esq.

4. **Expenses.** The Clients are, in any event, liable to the Attorneys for all reasonable expenses and disbursements made in connection with the performance of the above-said legal services, in the past and in the future, including, but not limited to, court costs, electronic filing fees, sheriff's fees, long-distance telephone expenses, transportation, photocopying, private investigator fees, paralegal and office overhead expenses and expert witness fees. Expenses are estimated to be in excess of $50,000 if the case proceeds to a retrial of the claims against the

4

Arapahoe defendants or further litigation against Travelers. The Clients hereby give authorization for the Attorneys to incur expenses in an amount necessary, in the Attorneys' sole judgment to avoid professional or civil claims by unpaid vendors, provided that before doing so the Attorneys shall provide notice to the Trustee of their intent to advance further funds to avoid such claims or damage to their representation and allow the Trustee to make such payments directly in order to prevent the resulting ten percent increase in the fee percentages set forth in the table attached hereto as Exhibit A. In the event the Trustee elects to make such a payment, he must do so within ten days of notice by the Attorneys of their intent to advance such cost payments. In the event the Trustee does not do so, and the Attorneys do advance further costs, their right to reimbursement of the same shall exist separately from their percentage-based fee, which shall increase by ten percent as set forth in Exhibit A. Further, if the portion of unpaid expenses advanced by the Attorneys are not reimbursed by September 6, 2018, the ten percent increase related to further expenditure of costs by the Attorneys shall apply. All expenses remaining unpaid at the time of recovery of funds in excess of fees owed hereunder to the Attorneys, the same shall be paid from the Clients' portion of the recovery, and the Client hereby authorizes this sum to be deducted from any recovery prior to distribution. If no recovery is obtained, the Clients shall remain responsible for the payment of all costs and expenses incurred in the litigation in the past and future.

      5.    **Waiver of Hourly Fee.** The Clients acknowledge that the Attorneys have discussed continuing to perform the above-said legal services on behalf of the Clients at the hourly rates for which they were originally retained, but the Clients are unable to continue to retain the Attorneys on an hourly basis. The Clients recognize this option to retain the Attorneys on that basis and hereby elect not to do so.

      6.    **Disclosures Acknowledged by Client.** The Clients also hereby acknowledge that the Attorneys have disclosed the contents of the attached Disclosure Statement. *The Clients agree that the Attorneys have given no guarantee regarding the successful termination of any of the Clients' claims, cause of action, or negotiation and that all expressions by the Attorneys relative to the Clients' claims are matters of their opinion only, but are given in good faith.*

      7.    **Risks and Uncertainties of Litigation.** In addition to the matters acknowledged by the Client as recited in the attached Disclosure Statement, the Clients understand and agree that there are certain unavoidable risks and uncertainties inherent in all litigation, including the risk of an unsuccessful result, an adverse award of costs and/or attorneys' fees, loss of time and loss of any money invested in the form of expenses during the pendency of the claim.

      8.    **Withdrawal.** The parties agree that the Attorneys may move to withdraw from representation of the Clients in this matter if investigation discloses that the liability of any defendant is not covered by a policy of insurance or such defendant is otherwise financially insolvent, or that the probability of recovery is determined to be such that further pursuit of the claims are not advisable. The Clients understand and agree that a conflict of interest and/or lack of communication between the Clients and the Attorneys may necessitate the Attorneys' withdrawal from the case, and that such withdrawal is hereby authorized in advance by the Clients upon three days' notice by regular mail, whether or not said notice is accepted or collected by the Clients or

5

an agent or representative or relative of the Clients. This right of withdrawal shall be deemed absolute and may be exercised by the Attorneys at any time when, in their sole and absolute discretion, personal relations between the Attorneys and the Clients render proper representation of the Clients difficult by virtue of personality conflict, inability to agree as to the proper means of prosecuting the case, payment of costs, cooperation with the Attorneys, or other similar issues. If at any time it appears that the outlined course of representation will not likely lead to the recovery of assets sufficient to justify the expenditure of time and costs associated with representation, the Attorneys may withdraw from representation.

    9.  **Subrogation.** The Clients authorize the Attorneys to pay from the amount collected the following: any and all expert fees and costs (*e.g.*, all engineers, architects, subrogation claims and liens, court reporter fees, mediator fees, and other costs). Where applicable law specifically requires the Attorneys to pay the claims of third parties out of any amount collected for the Clients, the Attorneys shall have the authority to do so notwithstanding any lack of authorization by the Clients, but if the amount or validity of the third-party claim is disputed by the Clients, the Attorneys shall deposit the funds into the registry of an appropriate court for determination. Any amounts paid to third parties will not be subtracted from the amount collected before computing the amount of the contingent fee under this Agreement.

    10.  **Settlements Negotiated by Client or Termination of Agreement by Client.** The right of the Attorneys to recover a fee as provided herein shall not be diminished if the Clients' claims are negotiated or settled by persons other than the Attorneys or their designated representatives. In the event that the Clients compromise or settle any claim or claims, either without the knowledge of the Attorneys or in such fashion as to significantly reduce the fee to which the Attorneys would be otherwise entitled under this Agreement, the Attorneys retain the right to be compensated. In the event the Clients terminate this Contingency Fee Agreement without wrongful conduct by the Attorneys which would cause the Attorneys to forfeit any fee, the Attorneys may ask the court or other tribunal to order the Clients to pay the Attorneys a fee based upon the reasonable value of the services provided by the Attorneys. If the Attorneys and the Clients cannot agree how the Attorneys are to be compensated in this circumstance, the Attorneys will request the court or other tribunal to determine: (1) if the Clients have been unfairly or unjustly enriched if the Clients do not pay a fee to the Attorneys; and (2) the amount of the fee owed, taking into account the nature and complexity of the Clients' case, the time and skill devoted to the Clients' case by the Attorneys, and the benefit obtained by the Clients as a result of the Attorneys' efforts. Any such fee shall be payable only out of the gross recovery obtained by or on behalf of the Clients and the amount of such fee shall not be greater than the fee that would have been earned by the Attorneys if the contingency described in this Contingency Fee Agreement had occurred. Factors to be considered include the value of the services rendered or *quantum merit*.

    11.  **Arbitration.** If the Clients dispute the fees or costs that the Attorneys have charged the Clients under this Agreement, and the parties cannot amicably resolve that dispute, the dispute will be decided by the Denver Bar Association Legal Fee Arbitration Committee. There is no charge for this dispute resolution service. If a dispute arises regarding any other aspect of the Attorneys' representation of the Clients, including legal malpractice, the Clients agree that that

kind of dispute will be decided by a single arbitrator at the Judicial Arbiter Group in Denver, Colorado. If the parties cannot agree upon an arbitrator, the management of the Judicial Arbiter Group will make the selection. These arbitrators are usually lawyers and retired judges. There are charges for using the Judicial Arbiter Group, and they can be expensive. If there is arbitration with the Judicial Arbiter Group, each side (no matter how many "parties") will be responsible for paying one-half of all fees and expenses charged by Judicial Arbiter Group. Any arbitration shall be governed by the Uniform Arbitration Act, as adopted in Colorado. In any kind of arbitration proceeding, the parties are responsible for paying the attorneys' fees and costs that they incur in that proceeding.

**The Clients understand that by agreeing to arbitration, you are relinquishing your right to bring an action in court and to a jury trial. Also, discovery in an arbitration proceeding is usually quite limited, and the grounds to appeal an arbitrator's decision are very limited.**

12. **Reasonable Cooperation.** The Clients agree to maintain a current address with the Attorneys and to cooperate fully with all requests made by the Attorneys in the preparation and trial of the case, to appear for all necessary deposition and court appearances, and to comply with all reasonable requests made to them in connection with the preparation and presentation of the case. At the time of the execution of this Agreement, the only address to which any notice must be mailed to be valid is the business address of Tom Connolly, who is authorized by the terms of this Agreement to speak and make decisions on behalf of Orion as well as the TASS bankruptcy estate.

13. **Authorization to Release Information.** The Clients hereby authorize the Attorneys to turn over all information, including any pictures, to any insurance company or other representative of any Defendant at the discretion of the Attorneys and as needed to pursue the claim described above.

14. **Survival.** This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of each of the parties hereto.

15. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supersedes all prior oral or written communications or agreements of the parties. No modifications or amendments may be made to this Agreement unless in writing and signed by the parties.

16. **Governing Law.** This Agreement will be governed by, enforced, and construed in accordance with the laws of the State of Colorado without regard to its choice of law principles.

17. **Severability.** The provisions of this Agreement are severable, and in the event that one of more provisions is deemed illegal or unenforceable, the remaining provisions shall remain in full force and effect.

18. **Counterparts.** This Agreement may be executed in counterparts and by facsimile, and, if so executed, will be effective as if simultaneously executed at the time of execution of the last executed counterpart.

19. **Headings.** The headings of the paragraphs of this Agreement are inserted for convenience only and shall not be deemed a substantive part of this Agreement; nor shall they be used for purposes of interpreting or construing any of the provisions of this Agreement.

**I HAVE READ THIS AGREEMENT AND THE ATTACHED
DISCLOSURE STATEMENT BEFORE SIGNING AND HAVE
CONSULTED WITH AN ATTORNEY OF MY CHOOSING REGARDING
THIS AGREEMENT OR DECLINED TO DO SO.**

THE CLIENTS:

*Tempus Aircraft Sales & Service
By: Tho. St. Connelly, Trustee*
Tom Connolly, Esq., duly appointed Trustee in bankruptcy
for TASS

*950 Spruce St., Louisville, Co*
Mail address

*8/7/18*
Date of signature

_____
Jack Gulbin, duly authorized representative of Orion

_____
Mail address

_____
Date of signature

8

18. **Counterparts.** This Agreement may be executed in counterparts and by facsimile, and, if so executed, will be effective as if simultaneously executed at the time of execution of the last executed counterpart.

19. **Headings.** The headings of the paragraphs of this Agreement are inserted for convenience only and shall not be deemed a substantive part of this Agreement; nor shall they be used for purposes of interpreting or construing any of the provisions of this Agreement.

**I HAVE READ THIS AGREEMENT AND THE ATTACHED
DISCLOSURE STATEMENT BEFORE SIGNING AND HAVE
CONSULTED WITH AN ATTORNEY OF MY CHOOSING REGARDING
THIS AGREEMENT OR DECLINED TO DO SO.**

THE CLIENTS:

*Tempus Air Craft Sales & Service
By: /s/ T. Connolly, Trustee*
Tom Connolly, Esq., duly appointed Trustee in bankruptcy for TASS

*950 Spruce St., Louisville, CO*
Mail address

*8/7/18*
Date of signature

*/s/ Jack Gulbin*
Jack Gulbin, duly authorized representative of Orion

*43 Sommersett Circle, Englewood, CO 80111*
Mail address

*8/08/2018*
Date of signature

THE ATTORNEYS

_____
Brett Godfrey
GODFREY | JOHNSON, P.C.
9557 South Kingston Court
Englewood, Colorado 80112
(303) 228-0700

8 Aug 2018
Date of signature

| Exhibit A to Contingency Fee Agreement |
|---|---|---|
| **Contingency Fee Percentages for Claims Against Arapahoe Defendants (Which Are Presently On Appeal)** |
| Payment Point | Description | Percentage |
| 1 | Payment before appellate response brief is finalized and filed | 10% |
| 2 | Payment after brief finalized and filed without further work on Supreme Court appeal or remand for further proceedings in District Court | 15% |
| 3 | Payment during pendency of Supreme Court appeal or after appeal is completed (if without remand for new trial) | 20% |
| 4 | Payment during remand but before retrial | 33% |
| 5 | Payment after commencement of retrial | 40% |
| **Contingency Fee Percentages for Claims Against Travelers** |
| Payment Point | Description | Percentage |
| 6 | Payment by Travelers without further legal work by Godfrey | Johnson on collection of the settlement amount | 5% |
| 7 | Payment by Travelers following initiation of further legal work, not including commencement of a new civil action against Travelers | 10% |
| 8 | Payment by Travelers following commencement of new civil action against Travelers | 33% |
| 9 | Payment by Travelers following commencement of trial of a new civil action against Travelers | 40% |

**IMPORTANT NOTES:** (1) "Payment" refers to either a negotiated settlement amount or simple satisfaction of the judgment against the Arapahoe Defendants. (2) Fee percentages are paid in addition to costs owed to vendors or otherwise incurred in the action, including past costs incurred (some of which were advanced by Godfrey | Johnson, P.C., and others were not) as well as future costs incurred. All costs owed to vendors (including but not limited to expert witnesses, court reporters, photocopying, transcript and delivery fees) to be brought current by September 6, 2018. (3) If Godfrey | Johnson, P.C. is required to advance further costs or must do so in order to avert a threat of a civil suit or ethical complaint, all fees increase by 10%. (4) If Godfrey | Johnson's outstanding legal fees are paid prior to the performance of further work, all fees are reduced by 5%. (5) No appellate work other than the presently pending appeal filed by the Arapahoe defendants and any subsequent appeal of that outcome to the Colorado Supreme Court are contemplated by this agreement. (6) The 5% fee under Payment Point 6 would be for legal services performed in the past by this firm which remain unpaid, including research, correspondence with Travelers' counsel and other actions.

## DISCLOSURE STATEMENT

**TYPES OF ATTORNEY FEE AGREEMENTS:** I have been informed and understand that there are several types of attorney fee arrangements: (1) time based, (2) fixed, (3) contingent, or (4) combinations of these types of fee arrangements. "Time based" means a fee that is determined by the amount of time involved such as so much per hour, day or week. "Fixed" means a fee that is based on an agreed amount regardless of the time or effort involved or the result obtained. "Contingent" means a certain agreed percentage or amount that is payable only upon attaining a recovery regardless of the time or effort involved. I understand that not all attorneys offer all of these different types of fee arrangements, and I acknowledge that I have the right to contact other attorneys to determine if they may provide such other fee arrangements for my case or matter. After such consideration or consultation, I have elected the fee arrangement set forth in the accompanying contingent fee agreement.

**SPECIALLY AWARDED ATTORNEYS' FEES:** I have been informed and understand that the court or an arbitrator may sometimes award attorneys' fees in addition to the amount of recovery being claimed. I understand that the fee agreement I enter into with my attorneys should contain a provision as to how any specially awarded attorneys' fee will be accounted for and handled.

**EXPENSES:** I have been informed and understand that there may be expenses (aside from my attorneys' fee) in pursuing my claim. Examples of such expenses are: fees payable to the court, the cost of serving process, fees charged by expert witnesses, fees of investigators, fees of court reporters to take and prepare transcripts of depositions, and expenses involved in preparing exhibits. I understand that an attorney is required to provide me with an estimate of such expenses before I enter into an attorney fee agreement and that my attorney fee agreement should include a provision as to how and when such expenses will be paid. I understand that the fee agreement should tell me whether a fee payable under the proceeds of the amount collected on my behalf will be based on the "net" or "gross" recovery. "Net recovery" means the amount remaining after expenses and deductions. "Gross recovery" means the total amount of the recovery before any deductions. The estimated amount of expenses to handle my case will be set forth in the Contingency Fee Agreement.

**THE POTENTIAL OF COSTS AND ATTORNEYS' FEES BEING AWARDED TO THE OPPOSING PARTY:** I have been informed and understand that a court or arbitrator sometimes awards costs and attorneys' fees to the opposing party. I have been informed and understand that should that happen in my case, I will be responsible to pay such award. I understand that the fee agreement I enter into with my attorneys should provide whether an award against me will be paid out of the proceeds of any amount collected on my behalf. I also understand that the agreement should provide whether the fee I am obligated to pay my attorneys will be based on the amount of recovery *before* or *after* payment of the awarded costs and attorneys' fees to an opposing party.

Page 1

**ASSOCIATED COUNSEL:** I have been informed and understand that my attorneys may sometimes hire another attorney to assist in the handling of a case. That other attorney is called an "associated counsel." I understand that the attorney fee agreement should tell me how the fees of associated counsel will be handled.

**SUBROGATION:** I have been informed and understand that other persons or entities may have a subrogation or lien right in what I recover in pursuing my claim. "Subrogation" means the right to be paid from my proceeds such as when an insurer or a federal agency pays money to or on behalf of a claiming party like me. Subrogation rights and liens need to be considered and provided for in the fee agreement I reach with my attorneys. The fee agreement should tell me whether the subrogation right or lien is being paid by my attorneys out of the proceeds of the recovery made on my behalf and whether the fee I am obligated to pay my attorneys will be based on the amount of recovery before or after payment of the subrogation right or lien.

**SHARING MY LAWYER WITH OTHERS (MUTUAL REPRESENTATION):** I have been informed regarding the possibility that my lawyer may represent others in connection with the claim or controversy described in the Contingency Fee Agreement, or related claims. I understand and accept the fact that sharing my lawyer with others may present an inherent conflict of interest for the attorney, but feel that the benefits of joint representation, such as a common litigation strategy and sharing of some of the costs of litigation, as well as other benefits, outweighs the disadvantages of joint representation. The disadvantages of joint representation which have been explained to me include the fact that the interests of one Client may at some times in the litigation be different from the interests of another Client. I fully understand that settlement offers of a joint nature made to more than one claimant may not be accepted by either claimant unless the claimants agree to a split or sharing percentage of the proceeds. I further authorize my Attorneys to withdraw from my claim and continue to represent others if a conflict of interest appears to warrant the same or if I request the same; provided, however, that it shall be understood that if the Attorneys withdraw prior to the termination of this lawsuit, they shall be entitled to either an hourly fee as set forth in the Contingency Fee Agreement or a fair pro-rata share of the recovery to be decided by the court.

**ALTERNATIVE ATTORNEY COMPENSATION:** I have been informed and understand that if, after entering into a fee agreement with my attorney, I terminate the employment of my attorney or my attorney justifiably withdraws, I may nevertheless be obligated to pay my attorney for the work done by my attorney on my behalf. The fee agreement should contain a provision stating how such alternative compensation, if any, will be handled.